[No. E020253. Fourth Dist., Div. Two. July 29, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN ERIC CRAIG, Defendant and Appellant.

[No. E021863. Fourth Dist., Div. Two. July 29, 1998.]

In re STEVEN ERIC CRAIG on Habeas Corpus.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 1., 3. and 4.

## Counsel

Stephen S. Buckley, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Carl H. Horst, Niki Cox Shaffer and Gary Brocio, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**RAMIREZ, P. J.**—A jury convicted Steven Eric Craig of threatening the life of or threatening to do serious bodily harm to a deputy public defender. (Pen. Code,[1] § 76.) In bifurcated proceedings, the trial court found that Craig had suffered two "strike" priors. (§ 667, subds. (c), (e).) He was sentenced to prison for 25 years to life and appeals, claiming his motion to dismiss was erroneously denied and prosecutorial misconduct and jury instruction and sentencing errors occurred. We reject his contentions and affirm. In a petition for writ of habeas corpus, which we consolidated with the appeal for purposes of determining if an order to show cause should issue, he contends that his trial counsel was incompetent. We reject this contention and therefore deny his petition.

### Facts

Craig, who had previously been convicted of, inter alia, murder, attempted murder and threatening the President of the United States, was convicted in September 1995 of misdemeanor assault and a misdemeanor drug offense, for which he received probation. The public defender who represented Craig during the latter case (hereafter, the victim) felt that the disposition in that case was "more than fair." Craig did not agree. In February 1996, Craig sent the following letter to the deputy district attorney who was in charge of the prosecutor's office of the trial court where the disposition had been reached:

"Dear Sir,

---

[1]All further statutory references are to the Penal Code.

"I don't know your name but, if you have some disagreement with this, you can take it up with the federal government.

"My name is Steven Eric Craig and I want to be legal and I do mean downright actual.

"I was arrested unlawfully by Hemet Police Dept. on 7-11-95, for which I received 3 yrs. probation ~~from~~ as a result of a crooked deal hammered out by [my p]ublic [d]efender . . . on 8-30-95.

"The Secret Service tells me you are the man to go to and who must overturn the conviction and let me be actual as a result of this so-called deal.

"[My p]ublic [d]efender told me that I couldn't be legal at my charges and also told me that Sheriff's Officers would be marching in, in a number of minutes to arrest me and to quote him 'haul me off for 18 mos.' So, I took the deal out of fear.

"I do not like to be told that I am not legal when I am. He has obviously never been shot as a professional, yet. His day is coming if he will not defend me to my satisfaction! I mean business, sir! I suggest you get some-thing done about this before I decide to show you just how legal I really am! Make an app[oin]t[ment] . . . if you need anything explained any further!

"Thank You.

"Steven Eric Craig . . . .

"P.S. [T]his is no threat, this is a promise!" (Strikethrough in original.)

The victim, who was shown the letter by the deputy district attorney who received it, testified that after he discovered information about Craig's past criminal convictions, which indicated that Craig was far more dangerous than he had originally thought, he took the statements in the letter as a threat. He also said that his fear of Craig was greater at the time of trial than it had been when he was first shown the letter by the deputy district attorney. Further facts concerning the crime are discussed elsewhere in this opinion.

ISSUES AND DISCUSSION

1. *Motion to Dismiss**

. . . . . . . . . . . . . . . . . . . . . . . . .

2. *Jury Instruction*

 a. *CALJIC No. 7.40*

Section 76 provides, in pertinent part: "Every person who knowingly and willingly threatens the life of, or threatens serious bodily harm to, any . . . county public defender . . . , with the specific intent that the statement is to be taken as a threat, and the apparent ability to carry out the threat by any means, is guilty of a public offense. . . . [¶] . . . [¶] (c) . . . (1) 'Apparent ability to carry out the threat' includes the ability to fulfill the threat at some future date when the person making the threat is an incarcerated prisoner with a stated release date. [¶] . . . [¶] (5) 'Threat' means a verbal or written threat or a threat implied by a pattern of conduct or a combination of verbal or written statements and conduct made with the intent and the apparent ability to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her immediate family."

Two somewhat contradictory things in section 76 are worthy of note: First, by its express inclusion in the term "apparent ability to carry out the threat" the ability of an incarcerated person to fulfill the threat at some future date, it *implies* that for nonincarcerated defendants, the ability to fulfill the threat must be present. However, it is also logical to assume that the statute is impliedly equating "apparent ability" with "present ability"; second, nowhere in the statute does the word "present" appear.

CALJIC No. 7.40 duplicates the above provisions and adds another, not expressly provided for in section 76, which is the subject of this contention by Craig. CALJIC No. 7.40 states that an element of the offense is that the defendant "had the present ability to carry out the threat by any means."

The comment to CALJIC No. 7.40 refers only to section 76 and to 2 Witkin and Epstein, California Criminal Law (2d ed. 1988) Crime Against Governmental Authority, section 1135, page 1315, which make no reference whatsoever to a present ability to carry out the threat.

---

*See footnote, *ante*, page 1082.

██ Over defense objection, the trial court here changed the word "present" in the last paragraph of CALJIC No. 7.40 to "apparent."[6] Craig here contends that *Watts* v. *United States* (1969) 394 U.S. 705, 707 [89 S.Ct. 1399, 1401, 22 L.Ed.2d 664], *United States* v. *Kelner* (2d Cir. 1976) 534 F.2d 1020, 34 A.L.R.Fed. 767 and *People* v. *Gudger* (1994) 29 Cal.App.4th 310 [34 Cal.Rptr.2d 510] "compel the conclusion that the only threats which may constitutionally be proscribed are those which are immediate and which have the immediate prospect of execution." (Internal quotation marks, boldface & underlining omitted.) We disagree.

Other than paying homage to the concept of a "true threat," without discussion of what constitutes such a threat, *Watts* is really of little assistance to the issue before us. In *Watts*, the United States Supreme Court concluded that the political hyperbole engaged in by the defendant did not meet the requirements of a federal statute aimed at prohibiting threats to public officials.[7]

██ Of much greater applicability, however, is *Kelner*, which, unlike *Watts*, does not bind us. (See *In re Tyrell J.* (1994) 8 Cal.4th 68, 79 [32 Cal.Rptr.2d 33, 876 P.2d 519].) However, in any discussion of the extent to which we should be persuaded by language in *Kelner*, we cannot ignore the California Supreme Court's interpretation of *Kelner* in *In re M.S.*, *supra*, 10 Cal.4th 698, which, of course, binds us.

---

[6]The trial court, over defense objection, also deleted from the definition of "apparent ability to carry out that threat" the provision related to incarcerated prisoners. Thus, that provision, as given to the jury, read, " 'Apparent ability to carry out that threat' includes the ability to fulfill the threat at some future date[.]" Although Craig here notes this, the crux of his argument deals with the other amendment to CALJIC No. 7.40. Aside from the comments we make in connection with that, we note that there was not an issue here as to Craig's ability to carry out his threat at some future date. If there had been, we would discuss this issue more in depth.

[7]During oral argument, Craig urged us to adopt the view that *Watts* requires all statutes like section 76 to require present ability in order to pass constitutional muster. Craig misreads *Watts*. In dicta, *Watts* said of the federal law there at issue, which required the threat to be "knowingly and willfully made," "Some early cases found the willfullness requirement met if the speaker voluntarily uttered the charged words with 'an *apparent* determination to carry them into execution.' [Citations.] . . . Perhaps this interpretation is correct, although we have grave doubts about it." (*Watts* v. *United States, supra*, 394 U.S. at pp. 707-708 [89 S.Ct. at p. 1401], italics in original.) The court went on to say, "But whatever the 'willfullness' requirement implies, . . . the Government [must] prove a true 'threat' " (*id.* at p. 708 [89 S.Ct. at p. 1401]) which the court concluded did not include the political hyperbole there at issue. By no stretch of the imagination does *Watts* stand for the proposition Craig claims it does. Additionally, contrary to Craig's claim at oral argument, nothing in *Watts* supports the position inferentially taken in *In re M.S.* (1995) 10 Cal.4th 698 [42 Cal.Rptr.2d 355, 896 P.2d 1365] that apparent ability is tantamount to present ability.

*In re M.S.* dealt with the constitutionality of California's hate crimes statutes, sections 422.6 and 422.7.[8] At this juncture, it is worthy of note that at the relevant time, section 422.6, like section 76, expressly referred to "the *apparent* ability to carry out the threat[,]" (italics added) but contained no language about the defendant's *present* ability. Section 422.7, on the other hand, specifically addressed the defendant's present ability. Of this, the California Supreme Court said, "Sections 422.6 and 422.7 each contain the element of present or apparent ability to carry out the threat, and are thus consistent with *Kelner*." (*In re M.S., supra,* 10 Cal.4th at p. 712.) Thus, the California Supreme Court declared apparent ability to be tantamount to present ability, and either to be satisfactory of whatever requirement was created by *Kelner*.[9] Now, on to that requirement.

. The hate crimes provisions were challenged in *In re M.S.* on the basis that they punished speech which did not qualify as a true threat. Specifically, "The minors . . . suggest the requirement in . . . [section] 422.6, that the offender have the 'apparent ability to carry out the threat,' fails to satisfy the requirement of imminence. *The minors err, however, in assuming the First Amendment always requires the threatened harm be imminent for the threat to be constitutionally punishable. It does not.* [¶] The error stems from an overly expansive reading of . . . *Kelner* . . . . [¶] The minors read *Kelner* as requiring any constitutionally valid statute punishing the making of threats to contain the element of immediacy or imminence. They purport to derive this requirement from the doctrines governing speech likely to incite imminent lawless action [citation] and 'fighting words,' i.e., words that by their very utterance inflict injury or tend to incite an immediate breach of the peace [citation]. *Kelner*, however, is distinguishable from the authorities pertaining to either incitement or fighting words, as it construed a statute lacking any requirement of specific intent. . . . In order to restrict the statute's application to true threats, as *Watts* [v. *United States, supra,* 394 U.S. 705] made clear the [United States] Constitution mandates, *Kelner* imposed the immediacy requirement quoted above. [Citation.] Moreover, *Kelner*'s requirement of imminence or immediacy must be read in light of the facts of that case. When the defendant made the threat, his victim had not

---

[8]Craig's attempt, during oral argument, to distinguish *In re M.S.* on the basis that section 76 has no specific intent requirement that the defendant execute the threat is meritless. Neither section 422.6 nor 427.7, at the time relevant to the decision, had such a requirement. The specific intent requirements they have, as explained in *In re M.S.*, relate to the intent to invade the victim's interests which are protected by the Constitution or provided for by statute. This is a far cry from specific intent to execute the threat.

[9]A commonsense reading of the version of CALJIC No. 7.40 given here, absent the reference to the ability to fulfill the threat at some future date, implies that the ability to carry out the threat be present. As already stated, had this been a case where there was evidence of no present ability to carry out the threat, but evidence of a future ability, we might conclude otherwise; however, it was not.

yet even set foot in the United States, and there was no evidence he was aware of the threat. [Citation.] Yet the *Kelner* court found the requisite immediacy in the fact the defendant professed the present ability to carry out the threat . . . . Sections 422.6 and 422.7 each contain the element of *present or apparent ability* to carry out the threat, and are thus consistent with *Kelner*. [¶] Furthermore, in contrast to the federal statute at issue in *Kelner*, subdivision (a) of section 422.6 expressly requires that a punishable threat be 'wilful.' In *People* v. *Lashley* (1991) 1 Cal.App.4th 938, 949 . . . , the Court of Appeal held that, to violate the statute, one must specifically intend, by means of threats of violence to another person, to invade interests protected by constitutional authority. . . . [¶] Given, therefore, the specific intent requirements in the two . . . statutes [section 422.6 required the threat to be willful and section 422.7 required the crime be committed "for the purpose of intimidating or interfering"], the concerns are absent that motivated the *Kelner* court to insist on evidence of the threat's imminence or immediacy, in prosecutions under a federal statute lacking such a mens rea requirement, and we decline to infer such a requirement. [¶] . . . [¶] . . . As long as the threat reasonably appears to be a serious expression of intention to inflict bodily harm [citation], and its circumstances are such that there is a reasonable tendency to produce in the victim a fear the threat will be carried out [citation], the fact the threat may be contingent on some future event (e.g., 'If you don't move out of the neighborhood by Sunday, I'll kill you') does not cloak it in constitutional protection. [Citation.] Section 422.6, therefore, is not unconstitutional for lacking a requirement of immediacy or imminence." (*In re M.S., supra*, 10 Cal.4th at pp. 711-714, italics added.) As is clear from this language, the United States Constitution does not create a requirement of present ability where, as here, the threat is willingly made, with the specific intent that it be taken as a threat.

Finally, we turn to *People* v. *Gudger, supra*, 29 Cal.App.4th 310, where the issue was the constitutionality of section 76. *Gudger* predated *In re M.S.* and may, in light of the latter decision, have been worded differently if decided today. Be that as it may, *Gudger* concluded that even under a more expansive interpretation of *Kelner* than the California Supreme Court permitted in *In re M.S.*, section 76, *minus CALJIC's addition of the "present ability" requirement*, was sufficient to pass constitutional muster. *Gudger* held: "The language in section 76 contains two critical elements which combine to satisfy the requirement that only true threats, and not political hyperbole, joking expressions of frustration, or other innocuous and constitutionally protected speech, are punished. The language of section 76 requires, in pertinent part, (1) 'the specific intent that the statement is to be taken as a threat' and (2) 'the apparent ability to carry out that threat by any means.' [¶] Although there is no requirement in section 76 of specific intent

to execute the threat, the statute requires the defendant to have the specific intent that the statement be taken as a threat and also to have the apparent ability to carry it out, requirements which convey a sense of immediacy and the reality of potential danger and sufficiently proscribe only true threats, meaning threats which 'convincingly express an intention of being carried out.' [Citation.] Section 76 is therefore worded in a manner which satisfies what decisions subsequent to *Watts* and *Kelner* have viewed as a guideline for determining whether there is a true threat: 'whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault. [Citations.]' [Citations.] [¶] Thus, section 76, while not a verbatim duplication of the unconditional language of the *Kelner* decision, adequately expresses the notion that the threats proscribed are only those 'so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution.'[10] [Citation.] Accordingly, section 76 is not constitutionally overbroad, and appellant's attack on the statute is without merit." (*People v. Gudger, supra,* 29 Cal.App.4th at pp. 320-321.)

---

[10]In *People v. Falck* (1997) 52 Cal.App.4th 287, 295 [60 Cal.Rptr.2d 624], which Craig cites as supportive of *Gudger,* the Court of Appeal dealt with the constitutionality of the antistalking law. Specifically addressing the defendant's claim that the law was overly broad because it did not contain *Kelner*'s limiting language that the threat be "so unequivocal, unconditional, immediate and specific as to . . . convey a gravity of purpose and imminent prospect of execution[,]" the court said, "There is . . . nothing magic about these words. A similar challenge was made and rejected in . . . *Gudger* . . . . The *Gudger* court held . . . that it was not necessary that the statute contain the [language] if the statute makes it clear that it prohibits only threats that are so unambiguous and have such immediacy that they convincingly express an intention of being carried out. [Citation.] The court concluded that section 76 met this requirement . . . [by containing the requirements of a] . . . ' " specific intent that the statement is to be taken as a threat" and . . . "the apparent ability to carry out that threat by any means." ' " (52 Cal.App.4th at p. 296 italics omitted.) The *Falck* court went on to hold: "The language of section 646.9 requires, in pertinent part, (1) the intent to place the victim in reasonable fear of his or her safety, and (2) the making of a 'credible threat.' The intent element of the section is a specific intent element, requiring that the actor embark upon a 'course of conduct *intended* to cause someone to fear.' [Fn. omitted.] . . . [A]t the time of appellant's communications to the victim, a 'credible threat' was defined as 'a verbal or written threat or a threat implied by a pattern of conduct or a combination of verbal or written statements and conduct made with the intent and the *apparent ability* to carry out the threat so as to cause the person who is the target of the threat to reasonably fear for his or her safety or the safety of his or her immediate family.' By these requirements section 646.9 limited its application to only such threats as pose a danger to society and thus are unprotected by the First Amendment." (*People v. Falck, supra,* 52 Cal.App.4th at pp. 296-297, italics in original.)

Thus, by no stretch of the imagination does *Falck* support Craig's interpretation of *Gudger.*

Craig also claims that *People v. Stanfield* (1995) 32 Cal.App.4th 1152 [38 Cal.Rptr.2d 328] supports his interpretation of *Gudger.* Again, he is incorrect. Although *Stanfield* cited *Gudger* with approval, it did so only on the unrelated issue of the conditionality of threats under section 422.

It is interesting to note that other provisions of the Penal Code which punish threats refer only to specific intent and/or apparent ability, and not to present ability (see §§ 95.1, 422.6, 646.9) and those that have been challenged similarly to Craig's challenge here have passed constitutional muster. (See *In re M.S., supra,* 10 Cal.4th 698; *People* v. *Halgren* (1996) 52 Cal.App.4th 1223 [61 Cal.Rptr.2d 176]; *People* v. *Falck, supra,* 52 Cal.App.4th 287.) Whatever the provisions of CALJIC No. 7.40, when, as here, some are not backed by precedent, they do not bind the trial courts. (See *People* v. *Glover* (1985) 171 Cal.App.3d 496 [217 Cal.Rptr. 340].)

Section 76 requires an apparent ability to carry out the threat. CALJIC No. 7.40's engrafting of an additional requirement of present ability is neither supported by the language of the statute, nor is it required by law in order for section 76 to pass constitutional muster. In our view, that provision should be deleted from CALJIC No. 7.40.

### b. *Defense Requested Instruction*

██ Craig unsuccessfully sought to graft onto section 76 the requirement of *Kelner* and section 422, that the threat be "so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution." (§ 422.) As *Gudger* held, such a requirement does not apply to section 76, either by its express terms or in order for it to pass constitutional muster.[11]

### c. *Threat Communicated to Third Person*

Over defense objection, the trial court gave the following instruction, which had been proffered by the prosecution: "In order to constitute a [']threat' it is not necessary that the threat be made directly to the intended victim. It is sufficient that the threat be made through a third party."

The trial court refused to give the following instruction, proffered by the defense: "Whether the threat is made to the person threatened[] is a factor to be considered in determining the specific intent of the person making the statement and his apparent ability to carry out the threat."

Without citing authority holding that the first instruction was an incorrect statement of the law and that the second was correct, Craig here asserts that it was error to give the former and refuse to give the latter. However, neither *Kelner* nor *Gudger* nor either of the other two cases cited by Craig in support

---

[11]As already stated, the same conclusion was reached as to a similar statute, section 646.9. (*People* v. *Falck, supra,* 52 Cal.App.4th 287.)

of his assertion even discusses this aspect of section 76. Craig's point has no merit.

### d. *CALJIC No. 2.90*

Craig repeats the often asserted argument that CALJIC No. 2.90, the standard jury instruction on reasonable doubt, is defective because of its omission of the term "moral certainty." A number of other courts have rejected the same argument (see *People* v. *Godwin* (1996) 50 Cal.App.4th 1562, 1571-1572 [58 Cal.Rptr.2d 545]; *People* v. *Barillas* (1996) 49 Cal.App.4th 1012, 1022 [57 Cal.Rptr.2d 166]; *People* v. *Honig* (1996) 48 Cal.App.4th 289, 342 [55 Cal.Rptr.2d 555]; *People* v. *Carroll* (1996) 47 Cal.App.4th 892, 895-896 [54 Cal.Rptr.2d 868]; *People* v. *Hurtado* (1996) 47 Cal.App.4th 805, 815-816 [54 Cal.Rptr.2d 853]; *People* v. *Tran* (1996) 47 Cal.App.4th 253, 263 [54 Cal.Rptr.2d 650]; *People* v. *Light* (1996) 44 Cal.App.4th 879, 886- 889 [52 Cal.Rptr.2d 218]; *People* v. *Torres* (1996) 43 Cal.App.4th 1073, 1078 [51 Cal.Rptr.2d 77]), and we agree with their reasoning. In light of the statement by the California Supreme Court in *People* v. *Freeman* (1994) 8 Cal.4th 450, 504 [34 Cal.Rptr.2d 558, 882 P.2d 249, 31 A.L.R.5th 888], that the inclusion of the term "moral certainty"[12] adds nothing to the jury's understanding of reasonable doubt, we cannot agree with Craig that omission of it from the instruction was error.

### 3., 4.*

. . . . . . . . . . . . . . . . . . . . . . . .

### 5. *Writ of Habeas Corpus*

■ As Craig acknowledges, in order to persuade us that an order to show cause should issue due to incompetency of counsel, he carries the burden of proving that counsel was inadequate and there is a reasonable probability that, but for the inadequacy, a result more favorable to him would have occurred. (*Strickland* v. *Washington* (1984) 466 U.S. 668, 687 [104 S.Ct. 2052, 2064-2065, 80 L.Ed.2d 674].) A reasonable probability is a probability sufficient to undermine confidence in the outcome. (*People* v.

---

[12]The United States Supreme Court noted in *Victor* v. *Nebraska* (1994) 511 U.S. 1, 14-15 [114 S.Ct. 1239, 1247, 127 L.Ed.2d 583], that "[a]n instruction cast in terms of an abiding conviction as to guilt, without reference to moral certainty, correctly states the government's burden of proof."

*See footnote, *ante*, page 1082.

*Williams* (1997) 16 Cal.4th 153, 215 [66 Cal.Rptr.2d 123, 940 P.2d 710].) A strong presumption of adequacy attaches (*In re Fields* (1990) 51 Cal.3d 1063, 1069 [275 Cal.Rptr. 384, 800 P.2d 862]), and the appellate court is even more deferential in matters involving trial tactics. (*People* v. *Fairbank* (1997) 16 Cal.4th 1223, 1243 [69 Cal.Rptr.2d 784, 947 P.2d 1321].) "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." (*Strickland* v. *Washington, supra,* 466 U.S. at p. 697 [104 S.Ct. at p. 697].)

██ First, Craig contends that his trial counsel was inadequate for refusing to permit him to testify at trial that he did not mean to threaten the victim.[15] However, in light of Craig's assertion, *following his conviction,* that when he wrote the letter he was angry at the victim in the letter, he was "clarifying the law, you can shoot a professional, if the attorney or doctor does not do what you want them to do" and "he felt . . . it was his constitutional right to shoot a professional who fails to do his job. . . ,"[16] along with the impeachment he would have subjected himself to due to the existence of his prior convictions for threatening, assaultive and murderous conduct, there was a sound tactical basis for not permitting Craig to testify at trial. Added to this is the fact, as the People point out, that Craig's postarrest statement that he did not mean to threaten the victim was introduced at trial. In light of all these facts, Craig cannot possibly persuade us that there is a reasonable probability that he would have enjoyed a different outcome had he taken the stand.

At trial, the parties stipulated that, following his arrest, Craig was given his *Miranda*[17] rights and he waived them and agreed to talk. The sergeant who interviewed Craig testified that Craig admitted authoring the letter, saying it was directed at the victim. When asked what he meant in the letter by the word, "shot," Craig put his hand in the form of a gun, which he pointed at the sergeant's chest, and said, "Bang," five times. Craig also said that he had a constitutional right to shoot the victim.

In his declaration in support of his petition for a writ of habeas corpus, Craig asserts that he was prepared to testify that he "was never advised of [his] *Miranda* rights, . . . never admitted authoring [the letter], . . . never

---

[15]Craig contends that the failure of his trial counsel to respond to the request of his appellate counsel to explain why he did each of the things Craig now criticizes, in and of itself, requires that we issue an order to show cause. Our disagreement with this assertion aside, we shall, therefore, presume that the facts Craig and appellate counsel represent as true are true, without the necessity of having them confirmed by trial counsel.

[16]Craig had made the first and third statements on another occasion, shortly after his arrest.

[17]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974].

said 'Bang'. . . , never positioned [his] hands in the form of a gun or pointed them towards anyone's chest . . . , and at the inception of the interview . . . [he] advised [the sergeant] that [he] wanted to 'stand on the 5th' and preferred an attorney before questioning."[18] He now contends that his trial counsel was incompetent for failing to move to suppress Craig's statements on the basis that they were obtained in violation of his *Miranda* rights. Of course, had he successfully done so, the only evidence admitted at trial that he did not intend for the letter to be taken as a threat by the victim would not have been introduced, as Craig made this statement during the interview. Had trial counsel for Craig moved for suppression, and Craig testified then in accord with his statements in the declaration, it would have been his word against the sergeant's. Craig fails to persuade us that there is a reasonable probability that he would have been successful in his motion. Therefore, he fails to carry his burden of showing inadequacy or prejudice. (See *In re Avena* (1996) 12 Cal.4th 694 [49 Cal.Rptr.2d 413, 909 P.2d 1017]; *People* v. *Price* (1991) 1 Cal.4th 324 [3 Cal.Rptr.2d 106, 821 P.2d 610].)

Next, Craig faults his trial counsel for failing to object to any of the exhibits offered at trial by the prosecution, which comprise the letter and its envelope, pictures of how the victim's office is situated in relation to the district attorney's office, pictures of the room in which Craig was interviewed following his arrest, his prison packet and his fingerprint exemplar. Craig suggests no basis upon which any such objection might have been advanced. Therefore, Craig fails to demonstrate that there was any possibility that such an objection would have been successful.

Craig also faults his trial attorney for failing to make an opening statement or introduce evidence. Other than a letter which Craig wrote to the victim *after his arrest*, in which he disclaimed any intent to threaten the victim,[19] Craig does not even suggest what the content of an opening statement or the nature of other evidence might have been. He thus fails to persuade us that there is a reasonable possibility that he would have enjoyed a better outcome had an opening statement been made or other evidence, if any existed, had been introduced.

During his direct examination, the deputy district attorney who received the letter testified that "[a]nything that was at all unusual came across my desk." The following colloquy then occurred between the prosecutor, the witness and defense counsel:

---

[18]He did not, in the declaration, expressly deny making the statement that he felt he had a constitutional right to shoot the victim.

[19]As stated before, this assertion was heard by the jury, by way of testimony which Craig now ironically claims his attorney should have sought to exclude.

"[The prosecutor:] With regard to this letter you received, why specifically did you consider it to be unusual?[20]

"[Defense counsel:] Objection, relevance.

"THE COURT: Overruled.

"THE WITNESS: Because it made a direct threat against a lawyer who worked in the Hemet court, [the victim]. It was addressed to me in my capacity as the District Attorney of Hemet. Wasn't addressed to me by name, but it was addressed to me in my capacity as the supervising D.A. of the Hemet office, and it made a direct threat that I interpreted to be on [the victim]'s life.

"[The prosecutor:] And as a result of that direct threat on [the victim]'s life, and is . . . [the victim] from the Hemet office, correct?

"[The witness:] Yes.

"[The prosecutor:] As a result of that direct threat on his life, what specifically did you do?

"[Defense counsel:] I would object. I believe she is misstating the evidence. I believe she is assuming facts not in evidence.

"[The prosecutor:] I was repeating his testimony.

"THE COURT: After you received the letter . . . , what did you do?

"THE WITNESS: After I read the letter, I called up [the victim]'s office within a few minutes, and he wasn't there, and I left a message for him to call me right away."

Craig now criticizes his trial counsel for failing to object to the witness's characterization of the letter as containing a "direct threat." While counsel may have been successful in making an objection based on the fact that the witness's testimony was conclusionary, the prejudicial impact to Craig of the letter itself and of the victim's testimony that he interpreted Craig's words as a threat, which he took seriously, was far more significant than this witness's brief statement. Thus, we are not persuaded that there is a reasonable probability that had Craig successfully objected to the testimony, a different outcome would have occurred.

As a result of the prosecutor's representation that she would prove the reasonableness of the victim's fear of Craig by introducing evidence of

---

[20]Craig incorrectly asserts that the question was leading and should have been objected to on that basis. It clearly was not.

Craig's violent past, defense counsel entered into a stipulation that based on his knowledge of Craig's prior criminal history, the victim reasonably feared for his safety and that of his immediate family. Craig now contends that his attorney was incompetent for entering into this stipulation. Faced with such a dilemma, however, we cannot fault counsel's tactical decision and we must be differential in such matters. (See *People* v. *Fairbank, supra,* 16 Cal.4th at p. 1243.). Moreover, we are not persuaded that there is a reasonable possibility that had counsel not entered into the stipulation, and the prosecutor paraded Craig's prior convictions for violent crimes before the jury, a more favorable result for Craig would have occurred.

Without any citation to the record, Craig asserts that there was evidence that he was mentally incompetent, and his trial attorney was inadequate for failing to have him examined or to enter a not guilty by reason of insanity (NGI) plea.[21] Without a factual basis for Craig's assertion, we cannot address it.

Finally, Craig faults his trial counsel for failing to move for a reduction of his conviction to a misdemeanor, pursuant to section 17, subdivision (b). However, in light of the trial court's remarks when denying his motion to dismiss his strike priors, Craig cannot possibly persuade us that such a motion had any chance for success. Therefore, the failure to bring it cannot amount to incompetency. (See *In re Avena, supra,* 12 Cal.4th 694; *People* v. *Price, supra,* 1 Cal.4th 324.)

Neither singularly, nor together, do any of the criticisms Craig voices concerning his trial counsel justify an order to show cause.

### DISPOSITION

The judgment is affirmed. The petition for writ of habeas corpus is denied.

Richli, J., and Gaut, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 4, 1998.

---

[21]As the People correctly point out, Craig had been previously examined, in connection with another case, pursuant to section 1368 and had ultimately been found to be competent. Also, as the People point out, when the trial court here sentenced Craig, it stated that Craig had a psychological impairment, but he was neither insane nor incompetent. In light of this remark, we doubt the potential for success of an NGI plea or competency proceedings.