Opinion
 

 BOREN, P. J.
 

 Appelant, Cynthia Gudger, made two telephone calls to the secretary of the presiding judge of the municipal court during which she threatened to buy a gun and shoot another judge handling an unlawful detainer matter against her if she was evicted from her apartment and became homeless. Appellant contends that her conviction for threatening the life of a judge (Pen. Code, § 76)
 
 [1]
 
 must be reversed because the statutory language defining the offense includes conditional threats which are not true threats and thus is overbroad in criminalizing speech which is protected by the First Amendment. She also urges that the evidence is insufficient to establish a threat and reveals merely an intemperate and overly dramatic expression of dissatisfaction with the judge handling her case and an inartful request to have the case assigned to a different judge. We find the statute constitutional and appellant’s attack upon the sufficiency of the evidence unavailing.
 

 
 *314
 
 Facts
 
 [2]
 

 On the morning of Friday, May 7, 1993, Cathy Stafford, a secretary to then Presiding Judge Aviva Bobb of the Los Angeles Municipal Court, received a telephone call. The caller identified herself as appellant. Stafford also recognized appellant’s voice because appellant had been in Stafford’s office a day or two previously. To confirm that appellant was the caller, Stafford asked if she was “the lady that was in the office with the oxygen tank,” and appellant replied that she was. Two prior meetings with Stafford had occurred in a front office and concerned an eviction case.
 

 Appellant apparently had an excessive number of cats living with her in her apartment, which resulted in the forcible removal of the cats to animal shelters, a related criminal offense for cruelty to animals, and an unlawful detainer proceeding brought to evict her.
 
 [3]
 
 At the outset of the Friday morning telephone call to Stafford, appellant requested assistance from Presiding Judge Bobb to intervene in her municipal court eviction case. Appellant felt that the judge in that case, Judge Soussan Bruguera, had been “mean” to appellant because she had ruled against appellant on a procedural matter. Appellant wanted Judge Bobb to assign the case to a different judge, who would treat appellant more fairly.
 

 During the course of an approximately 20-minute-long telephone conversation with appellant, Stafford indicated that Judge Bobb could not help appellant and suggested that she contact the Commission on Judicial Performance. As the conversation continued, appellant explained her concern that if Judge Bruguera did not rule in her favor, appellant would become homeless. According to Stafford, appellant “said that if that [bitch] caused her to be put out of her apartment, she did not own a gun, but she would buy a gun and would personally come into that courtroom and shoot the judge, kill Judge Bruguera and she would [then] turn and kill herself.” When Stafford asked appellant what she would accomplish by that, appellant explained that she “just would refusef] to be homeless.” The conversation with Stafford continued, and appellant again insisted that she would not be homeless and if that was the outcome of her court case, she would pursue her threat to buy a gun and come into the courtroom.
 

 
 *315
 
 After the telephone call, Stafford telephoned Judge Bruguera’s courtroom and advised the clerk of appellant’s threat Stafford advised Judge Bobb of the threat and called security personnel.
 

 Later that same day, appellant again called Presiding Judge Bobb’s office and spoke to Stafford. Stafford placed appellant’s call on the speaker phone so Judge Bobb could listen to the conversation. This second conversation, again lasting approximately 20 minutes, was essentially a continuation of the prior telephone conversation. Appellant sought Judge Bobb’s intervention in the case before Judge Bruguera, expressed a desire to have the case transferred to another judge, and again stated that if her landlord evicted her she would buy a gun and shoot Judge Bruguera and herself. Appellant also asked Stafford if she had heard about “the post office case,” referring to a shooting by a disgruntled postal employee.
 

 On the Friday appellant spoke with Stafford on the telephone, Judge Bruguera was not on the bench and did not return until Monday, at which time Stafford advised her of appellant’s threats. On that Monday, a deputy marshal spoke with Judge Bruguera regarding the threats. The judge “was extremely concerned and in fact was in fear of her life.” Thereafter, appellant’s eviction case was transferred to another judge.
 

 The court in the present case found appellant guilty of the offense of threatening a judge (§ 76) but not guilty of the other charged offense of making terrorist threats (§ 422). At sentencing, appellant was granted probation for 5 years on the conditions, among others, that she spend 149 days in the county jail, with credit for time served, perform 100 hours of community service, cooperate in psychological counseling, and not have any contact with Judge Bruguera or Cathy Stafford.
 

 Discussion
 

 I.
 
 Constitutionality of Section 76
 

 Appellant was convicted of violating section 76, which punishes “[ejvery person who knowingly and willingly threatens the life of, or threatens serious bodily harm to, any elected state official, exempt appointee of the Governor, or judge, or the immediate family of the official, appointee, or judge, with the specific intent that the statement is to be taken as a threat, and the apparent ability to carry out that threat by any means . . . .” Appellant attacks the statute as unconstitutionally overbroad in that it brings within its sweep and criminalizes speech which does not constitute a true threat. According to appellant, section 76 is unconstitutionally defective
 
 *316
 
 because it does not contain language limiting the application of the statute to threats which are so unequivocal, unconditional, immediate and specific as to convey to the person threatened an immediate prospect of the execution of the threat.
 

 Statutory overbreadth, as distinct from the related and occasionally overlapping concept of statutory vagueness, is a defect by which a statute, seeking to regulate an area of state interest, reaches too far and punishes innocent behavior. Overbreadth “offends the constitutional principle that ‘a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms.’ ”
 
 (Zwickler
 
 v.
 
 Koota
 
 (1967) 389 U.S. 241, 250 [19 L.Ed.2d 444, 451, 88 S.Ct. 391], quoting
 
 NAACP
 
 v.
 
 Alabama
 
 (1964) 377 U.S. 288, 307 [12 L.Ed.2d 325, 338, 84 S.Ct 1302].) A statute that is clear, precise and not unconstitutionally vague for lack of any fair warning of the conduct proscribed (see
 
 Papachristou
 
 v.
 
 City of Jacksonville
 
 (1972) 405 U.S. 156, 162 [31 L.Ed.2d 110, 115-116, 92 S.Ct. 839]) may nonetheless be defectively overbroad in that it prohibits constitutionally protected conduct. (See
 
 Aptheker
 
 v.
 
 Secretary of State
 
 (1964) 378 U.S. 500, 508-509 [12 L.Ed.2d 992, 998-999, 84 S.Ct. 1659].)
 

 The statute before us punishes the mere utterance of words and thus regulates the delicate area of speech. “[A] function of free speech under our system of government is to invite dispute. . . . Speech is often provocative and challenging. . . . That is why freedom of speech, though not absolute, [citation] is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.”
 
 (Terminiello
 
 v.
 
 Chicago
 
 (1949) 337 U.S. 1, 4 [93 L.Ed. 1131, 1134, 69 S.Ct. 894].) “[C]ertain well-defined and narrowly limited classes of speech”
 
 (Chaplinsky
 
 v.
 
 New Hampshire
 
 (1942) 315 U.S. 568, 571 [86 L.Ed. 1031, 1033, 62 S.Ct. 766]), such as the lewd and obscene, the libelous and the so-called “ ‘fighting’ words”
 
 {id.
 
 at p. 572 [86 L.Ed. at p. 1035]) which “ ‘have a direct tendency to cause acts of violence by the person to whom, individually, the remark is addressed’ ”
 
 {Gooding
 
 v.
 
 Wilson
 
 (1972) 405 U.S. 518, 524 [31 L.Ed.2d 408, 524, 92 S.Ct 1103]), may be constitutionally proscribed and punished by properly drafted statutes.
 

 Similarly, a statute may constitutionally criminalize speech which threatens to take the life of or to inflict bodily harm upon a government official in view of the state’s valid and overwhelming interest in protecting the safety
 
 *317
 
 of its public officials and permitting them to perform duties without interference from threats of physical violence. (See
 
 Watts
 
 v.
 
 United States
 
 (1969) 394 U.S. 705, 707 [22 L.Ed.2d 664, 666-667, 89 S.Ct. 1399] [statute punishing threats to the life of the president found “constitutional on its face”];
 
 United States
 
 v.
 
 Kelner
 
 (2d Cir. 1976) 534 F.2d 1020, 1027 [penalizing specific threats of physical injury is a valid aspect of government’s constitutional responsibility to ensure domestic tranquility].) “Although the Legislature may constitutionally penalize threats, even though they are pure speech, statutes which attempt to do so must be narrowly directed only to threats which truly pose a danger to society.”
 
 (People
 
 v.
 
 Mirmirani
 
 (1981) 30 Cal.3d 375, 388, fn. 10 [178 Cal.Rptr. 792, 636 P.2d 1130].)
 

 Where, as here, the statute is attacked as overbroad, “[i]t matters not that the words [a speaker] used might have been constitutionally prohibited under a narrowly and precisely drawn statute.”
 
 (Gooding
 
 v.
 
 Wilson, supra,
 
 405 U.S. at p. 520 [31 L.Ed.2d at p. 413].) The societal value and importance to the individual of constitutionally protected speech is deemed to justify “attacks on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity."
 
 (Dombrowski
 
 v.
 
 Pfister
 
 (1965) 380 U.S. 479, 486 [14 L.Ed.2d 22, 28, 85 S.Ct. 1116].) The specific speech uttered is thus relevant only to the sufficiency of the evidence and not to the constitutionality of the statute. “It is the [statute] on its face that sets the standard of conduct and warns against transgression. The details of the offense could no more serve to validate [a statute] than could the details of an offense charged under an ordinance suspending unconditionally the right of assembly and free speech.”
 
 (Coates
 
 v.
 
 Cincinnati
 
 (1971) 402 U.S. 611, 616 [29 L.Ed.2d 214, 218-219, 91 S.Ct. 1686].)
 
 [4]
 

 Appellant’s attempt to invalidate section 76 as unconstitutionally overbroad focuses on a related statute, section 422, which proscribes terrorist
 
 *318
 
 threats and contains certain defining language which has ensured the constitutionality of that statute, but which is not contained in section 76.
 
 [5]
 
 An analysis of appellant’s argument requires a review of the history of section 422 and the rationale for the language in that statute, which requires the threats to be “so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat.” (§ 422.)
 

 The original version of section 422 (Stats. 1977, ch. 1146, § 1, pp. 3684-3685) prohibited threats of death or great bodily injury made with the intent to “terrorize” another. In
 
 People
 
 v.
 
 Mirmirani, supra,
 
 30 Cal.3d 375, the Supreme Court held section 422 and a companion statute (§ 422.5) unconstitutionally vague. The two related statutes criminalized threats made with the intent to accomplish “ ‘social or political goals,’ ” a phrase so all-inclusive and vague that determining what conduct was prohibited was impossible.
 
 (People
 
 v.
 
 Mirmirani, supra,
 
 at pp. 382-388.) Since the court invalidated former section 422 on vagueness grounds, it was unnecessary to determine whether the statute was also unconstitutionally overbroad in that it penalized protected speech. Nonetheless, the court, noted that a statute which penalizes speech amounting to a threat “must be narrowly directed only to threats which truly pose a danger to society. [Citations.]”
 
 (People
 
 v.
 
 Mirmirani, supra,
 
 30 Cal.3d at p. 388, fn. 10.)
 

 In support of the principle that a statute which penalizes threatening speech must be narrowly directed only to truly dangerous threats, the
 
 Mirmirani
 
 court relied upon
 
 Watts
 
 v.
 
 United States, supra,
 
 394 U.S. 705, and an opinion interpreting
 
 Watts, United States
 
 v.
 
 Kelner, supra,
 
 534 F.2d 1020. In
 
 Watts,
 
 the United States Supreme Court concluded that a federal statute which prohibited knowingly and willfully threatening to kill or physically harm the president was “constitutional on its face” in view of the “overwhelming interest in protecting the safety of [the] Chief Executive and in allowing him to perform his duties without interference from threats of physical violence.” (394 U.S. at p. 707 [22 L.Ed.2d at p. 667].) Nonetheless, the court cautioned that a statute which criminalizes a form of pure speech must be interpreted with the commands of the First Amendment clearly in
 
 *319
 
 mind, and a true threat must be distinguished from constitutionally protected speech.
 
 {Id.
 
 at pp. 706-708 [22 L.Ed.2d at pp. 666-668].)
 

 The defendant’s conviction in
 
 Watts
 
 was set aside because his comments (i.e., “ T am not going [for a draft physical exam.] If they ever make me carry a rifle the first man I want to get in my sights is [President Johnson].’ ”) constituted “political hyperbole,” rather than a “true ‘threat’ ” when “[t]aken in context, and regarding the expressly conditional nature of the statement and the reaction of the listeners [who laughed].” (394 U.S. at pp. 706, 708 [22 L.Ed.2d at pp. 666, 667].) Since the evidence was insufficient in that it revealed mere political hyperbole and not a true threat, the court in
 
 Watts
 
 was not required to decide whether a true threat must include the specific intent to carry it into execution.
 
 {Id.
 
 at pp. 707-708 [22 L.Ed.2d at pp. 666-668].) That question was subsequently decided in another case cited by the
 
 Mirmirani
 
 court,
 
 United States
 
 v.
 
 Kelner, supra,
 
 534 F.2d 1020.
 

 In
 
 Kelner,
 
 the defendant was convicted of transmitting in interstate commerce a threat to injure another person. He argued that since he did not intend to carry out his threats, the statements he made were not threats within the meaning of the statute. The court in
 
 Kelner
 
 disagreed with the defendant, but relied on
 
 Watts
 
 and acknowledged that to satisfy First Amendment concerns, punishable threats must be limited to those statements which, according to their language and context, convey a gravity of purpose and a likelihood of execution.
 
 {United States
 
 v.
 
 Kelner, supra,
 
 534 F.2d at p. 1026.)
 

 The court in
 
 Kelner
 
 concluded that proof of specific intent to carry out the threat is not constitutionally compelled, as long as circumstances are such that the threats “are so unambiguous and have such immediacy that they convincingly express an intention of being carried out.” (534 F.2d at p. 1027, italics omitted.) The statute may be properly applied as long as “the threat on its face and in the circumstances in which it is made is
 
 so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution
 
 . . . .”
 
 {United States
 
 v.
 
 Kelner, supra,
 
 534 F.2d at p. 1027, italics added; see
 
 People
 
 v.
 
 Fisher
 
 (1993) 12 Cal.App.4th 1556, 1559-1560 [15 Cal.Rptr.2d 889] [speech proscribed by section 422 is not protected by the First Amendment just because speaker does not intend to implement the threat].)
 

 According to appellant, after
 
 Mirmirani
 
 and its tacit approval of the unconditional requirement of a threat, as described in
 
 Kelner,
 
 and the Legislature’s reenactment of section 422 (added by Stats. 1988, ch. 1256, §4, pp. 4184-4185, as amended by Stats. 1989, ch. 1135, § 1, pp. 4195-
 
 *320
 
 4196), which incorporated almost verbatim the
 
 Kelner
 
 “unconditional” language emphasized above, section 76 must likewise incorporate such unconditional language to pass constitutional muster. Certainly, section 422 “has been carefully drafted to comport with the detailed guidelines articulated by the
 
 Kelner
 
 court”
 
 {People
 
 v.
 
 Fisher, supra,
 
 12 Cal.App.4th at p. 1560) and thus “is not unconstitutionally overbroad . . . .”
 
 {Ibid.)
 
 Indeed, section 76 would likewise be immune from attack as unconstitutionally overbroad if it contained the detailed guidelines articulated in
 
 Kelner.
 

 Nonetheless, the question remains whether section 76, as drafted, is unconstitutionally overbroad. To resolve this question, it is necessary to analyze the rationale in
 
 Kelner
 
 which prompted the guidelines articulated by the court to determine whether other language, as in section 76, could have the same purpose and effect and thus also satisfy constitutional concerns. In
 
 Kelner,
 
 the court discussed
 
 Watts
 
 and determined that the reason for the Supreme Court’s constitutionally limited definition of the term “threat” was to ensure that only a “true threat” may be punished.
 
 {United States
 
 v.
 
 Kelner, supra,
 
 534 F.2d at p. 1027.) The court thus observed that the requirement in
 
 Watts
 
 of proof of a true threat has “much the same purpose and effect as would a requirement of proof of specific intent to execute the threat because both requirements focus on threats which are so unambiguous and have such immediacy that they convincingly express an intention of being carried out.”
 
 {Ibid.,
 
 italics omitted.) Obviously, no ritualistic, talismanic phrase is required as long as only true threats are proscribed and First Amendment concerns are thus satisfied.
 

 The language in section 76 contains two critical elements which combine to satisfy the requirement that only true threats, and not political hyperbole, joking expressions of frustration, or other innocuous and constitutionally protected speech, are punished. The language of section 76 requires, in pertinent part, (1) “the specific intent that the statement is to be taken as a threat” and (2) “the apparent ability to carry out that threat by any means.”
 

 Although there is no requirement in section 76 of specific intent to execute the threat, the statute requires the defendant to have the specific intent that the statement be taken as a threat and also to have the apparent ability to carry it out, requirements which convey a sense of immediacy and the reality of potential danger and sufficiently proscribe only true threats, meaning threats which “convincingly express an intention of being carried out.”
 
 (United States
 
 v.
 
 Kelner, supra,
 
 534 F.2d at p. 1027.) Section 76 is therefore worded in a manner which satisfies what decisions subsequent to
 
 Watts
 
 and
 
 Kelner
 
 have viewed as a guideline for determining whether there is a true threat: “whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the
 
 *321
 
 statement as a serious expression of intent to harm or assault. [Citations.]”
 
 (U.S.
 
 v.
 
 Orozco-Santillan
 
 (9th Cir. 1990) 903 F.2d 1262, 1265; accord,
 
 U.S.
 
 v.
 
 Mitchell
 
 (9th Cir. 1987) 812 F.2d 1250,1255;
 
 United States
 
 v.
 
 Merrill
 
 (9th Cir. 1984) 746 F.2d 458, 462.)
 

 Thus, section 76, while not a verbatim duplication of the unconditional language of the
 
 Kelner
 
 decision, adequately expresses the notion that the threats proscribed are only those “so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution.”
 
 (United States
 
 v.
 
 Kelner, supra,
 
 534 F.2d at p. 1027.) Accordingly, section 76 is not constitutionally overbroad, and appellant’s attack on the statute is without merit.
 

 II.
 
 Sufficiency of the Evidence
 

 Appellant contends that her statements to Stafford were not true threats, but rather overblown and overly dramatic pleas to have the presiding judge transfer the case to a different judge, who presumably would be less hostile to appellant’s position on the eviction matter. Appellant thus suggests that her remarks were merely intemperate hyperbole uttered to have Stafford impress upon Judge Bobb just how distressed she was with Judge Bruguera’s actions in the eviction matter.
 

 However, in view of the language used in appellant’s repeated threats and the circumstances which revealed her disgruntled and agitated state at the time of the threats, as well as her specific and well-focused pique with Judge Bruguera, there is substantial evidence that appellant intended her statements to be taken as true threats. Although the actual threats were couched in conditional language (i.e., if I am evicted from my apartment, then I will kill Judge Bruguera), the context of the statements sufficiently satisfies the requirement that the threats “convincingly express an intention of being carried out.”
 
 (United States
 
 v.
 
 Kelner, supra,
 
 534 F.2d at p. 1027.)
 

 A literal approach to the so-called conditional language used is not determinative in an analysis of the sufficiency of the evidence guided by First Amendment concerns. The touchstone of our analysis is thus not solely whether the language used in the threat is couched in a conditional grammatical construction. Rather, it is necessary to review the language and context of the threat to determine if the speaker had the specific intent that the statement was to be taken as a threat. We thus agree with the analogous analysis in
 
 People
 
 v.
 
 Brooks
 
 (1994) 26 Cal.App.4th 142, 144, 146-149 [31 Cal.Rptr.2d 283] (“ ‘If you go to court and testily [against fellow gang members], I’ll kill you,’ ” prosecuted under section 422), which focused on
 
 *322
 
 the importance of the context of the threats expressed, as distinguished from the approach in
 
 People
 
 v.
 
 Brown
 
 (1993) 20 Cal.App.4th 1251, 1253, 1255-1256 [25 Cal.Rptr.2d 76] (“ ‘if we called the police, he would kill us,’ ” prosecuted under section 422), which focused on a simplistic linguistic analysis of the degree to which the threatening language is couched in conditional words.
 

 Viewing appellant’s threats in their entire context, it is apparent that the repeated threat to shoot Judge Bruguera was not just an intemperate, overly dramatic, and inartful request to change judges. Appellant did not merely want a new judge. She wanted the eviction proceedings resolved in her favor. And regardless of the particular objective, appellant was willing to accomplish her goal by uttering a threat with the specific intent that the statement be taken as a threat. She repeated the threat and emphasized it by a dramatic reference to a recent shooting by a disgruntled postal employee. Although after appellant’s threats, Judge Bruguera quite understandably disqualified herself from the case, the threats went beyond hyperbole or an emotional request to disqualify a judge and constituted true threats within the meaning of section 76 and the constitutional constraints of the First Amendment.
 
 [6]
 
 Accordingly, appellant’s challenge to her conviction based on the absence of a legally sufficient threat is without merit.
 

 Disposition
 

 The judgment is affirmed.
 

 Gates, J., and Fukuto, J., concurred.
 

 Appellant’s petition for review by the Supreme Court was denied February 2, 1995.
 

 [1]
 

 All further statutory references are to the Penal Code unless otherwise indicated.
 

 [2]
 

 Appellant waived her right to a jury and stipulated to a trial based on the transcript of her preliminary hearing. She presented no defense.
 

 [3]
 

 According to the probation report in the present case, at the time of sentencing appellant had pending in another municipal court a charge of cruelty to animals. (§ 597, subd. (b).) Personnel from the department of animal regulation had been contacted by the county marshal’s office and discovered at appellant’s residence approximately 30 live cats and several dead cats in the freezer. The residence was “filled with cat defecation and various types of insects."
 

 [4]
 

 A statute, of course, may be saved from fatal overbreadth, or vagueness, if it is possible to give the statute a more narrowed reading by reference to common law meanings of the language in question, other statutes, or legislative history or purpose. (See
 
 Musser
 
 v.
 
 Utah
 
 (1948) 333 U.S. 95, 98 [92 L.Ed. 562, 565-566, 68 S.Ct. 397];
 
 In re Newbern
 
 (1960) 53 Cal.2d 786, 792 [3 Cal.Rptr. 364, 350 P.2d 116];
 
 People
 
 v.
 
 McCaughan
 
 (1957) 49 Cal.2d 409, 414 [317 P.2d 974].) However, it is inappropriate here to attempt to infer any narrowing gloss from such other sources, since the usual, ordinary import of the language used in the statute is clear and thus to be given its plain meaning (see
 
 People
 
 v.
 
 Weidert
 
 (1985) 39 Cal.3d 836, 843 [218 Cal.Rptr. 57, 705 P.2d 380];
 
 California Teachers Assn.
 
 v.
 
 San Diego Community College Dist.
 
 (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856]), which we find passes constitutional muster, as discussed hereinafter.
 

 [5]
 

 Section 422 provides, in pertinent part, as follows: “Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so
 
 unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,
 
 and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family’s safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison.” (Italics added.)
 

 [6]
 

 Appellant has not challenged the sufficiency of the evidence to establish that element of the offense which requires that the defendant have “the apparent ability to carry out [the] threat by any means." (§ 76.) Appellant claimed at the time of the threat she did not own a gun. However, the concept of “apparent ability” (§ 76) is a function of time and circumstances and thus a relative concept. (Cf.
 
 People
 
 v.
 
 Rubin
 
 (1979) 96 Cal.App.3d 968, 978-979 [158 Cal.Rptr. 488].) In view of the accessibility of firearms to the general public and Judge Bruguera’s absence but imminent return to the courtroom, it would be reasonable to conclude appellant had sufficient apparent ability to carry out the threat.