[No. B149066. Second Dist., Div. Five. Feb. 7, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM PRINCE GAUT, Defendant and Appellant.

**COUNSEL**

Christine C. Shaver, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General,

Jaime L. Fuster and Nora Genelin, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TURNER, P. J.**—Defendant, William Prince Gaut, appeals from his convictions for two counts of making terrorist threats. (Pen. Code,[1] § 422.) The trial court also found defendant had been convicted of a prior serious felony and served a prison term. (§§ 667, subd. (a)(1), 667.5 subd. (b), 1170.12.) Defendant argues there was insufficient evidence to support his conviction for violating section 422 as a matter of law because he was incarcerated when the threats were made. We disagree and affirm the judgment.

We view the evidence in a light most favorable to the judgment. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 [99 S.Ct. 2781, 2789, 61 L.Ed.2d 560]; *People v. Osband* (1996) 13 Cal.4th 622, 690 [55 Cal.Rptr.2d 26, 919 P.2d 640]; *Taylor v. Stainer* (9th Cir. 1994) 31 F.3d 907, 908-909.) Collette Blizzard met defendant at church in September 1999. They began dating shortly thereafter. Defendant began arguing with Ms. Blizzard, questioning where she was going and with whom she spoke. In November, defendant began grabbing Ms. Blizzard's clothing and pushing her against the wall during arguments. The arguments escalated during December. On New Year's Eve, defendant and Ms. Blizzard had plans to go out on a date. Defendant left in Ms. Blizzard's car and returned at 11:00 p.m. Defendant threw Ms. Blizzard against the wall and "snatche[d her] hair off." Ms. Blizzard knew they must separate.

Defendant convinced Ms. Blizzard he would not repeat this violence toward her. However, by mid-January the arguments began to reoccur. Defendant slapped Ms. Blizzard in the face with his open hand. The slapping incident occurred while Ms. Blizzard spoke with a tow truck driver. On February 1, 2000, defendant went out with Ms. Blizzard and his sister. Defendant left in Ms. Blizzard's car and did not return. Ms. Blizzard later learned that defendant had been arrested. Defendant remained in custody until April 23, 2000. Defendant telephoned Ms. Blizzard daily from jail. He assured Ms. Blizzard that he would attend anger management classes and change his behavior. Defendant returned to Ms. Blizzard's home. Shortly thereafter the arguments began anew. Defendant took Ms. Blizzard's car. He disappeared for a few days without explanation. On Memorial Day, defendant took her car. He claimed that it had been stolen. However, defendant returned the car a few days later, indicating he found it. Although Ms.

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

Blizzard wanted to break off her relationship with defendant, she knew it would be "vicious." Defendant told her he had "pistol-whipped" his former girlfriend. Defendant also told Ms. Blizzard he would have shot his former girlfriend if others had not intervened.

On June 2, 2000, Ms. Blizzard told defendant he must leave her home. Defendant had a key to the security gate on her front door. But he did not have a key to her home. Defendant refused to leave. However, defendant left the following day. On June 4, 2000, Ms. Blizzard took defendant's belongings to his mother's home. Later that evening defendant attempted to contact Ms. Blizzard by telephone and pager. Ms. Blizzard did not respond. When she returned home, her home appeared to have been burglarized. Someone had broken the security grill on the bedroom window. Ms. Blizzard's gun and rings were missing. Several of her belongings had been slashed. Although she thought defendant had burglarized her home, she reported the burglary to the police.

Ms. Blizzard was frightened. She did not return home that evening. Ms. Blizzard owned a transportation company. She worked the following morning transporting children. Ms. Blizzard stopped at her home to check on her dog. When she approached her door, she saw defendant's shoes and she ran. Defendant followed despite her pleas to leave her alone because she had children in her van. Defendant smashed his hand through the driver's side window of the van. Ms. Blizzard drove away, dragging defendant with the van. Later that day, defendant telephoned Ms. Blizzard from her home. Defendant told Ms. Blizzard she could have all of her things back for $1,200. Ms. Blizzard told him to get out and leave her alone. She was worried something would happen while her gun was in defendant's possession. Ms. Blizzard gave defendant $800 and told him to get out of her life.

On June 8, 2000, defendant told Ms. Blizzard they needed to talk. He said he would take care of her Jacuzzi, which he had torn up. Defendant had also taken the wires from the car in her driveway. Defendant offered to replace the items he destroyed. Ms. Blizzard told him to just leave her alone. Defendant continued to contact Ms. Blizzard by telephone on a daily basis thereafter. On June 19, 2000, defendant hid in a van in Ms. Blizzard's driveway. He jumped out at Ms. Blizzard as she approached her car. Defendant pushed Ms. Blizzard back into the house. Defendant told Ms. Blizzard she could not break up with him. Ms. Blizzard contacted the police the following day. She obtained a temporary restraining order against defendant. On July 11, 2000, a permanent restraining order was issued. Both were served on defendant while he was in custody.

Defendant made threatening telephone calls to Ms. Blizzard on June 19, 2000, and for three months thereafter. Ms. Blizzard recorded many of those

calls. She had also recorded threatening calls made by defendant prior to June 19, 2000, which were saved on her voicemail. The tapes were played at trial for the jury. Defendant made numerous telephone calls to Ms. Blizzard on a daily basis. In one such call, defendant stated: "I'm gone [*sic*] do some real ugly shit to you. . . ." A subsequent message defendant told Ms. Blizzard: "[Y]ou know I'm livid and I'm ready to fuck you show [*sic*] enough up. I'm going to make it my business to fuck your life up starting today. . . ." In other messages, defendant told Ms. Blizzard: "I'm gone [*sic*] cross your ass out of the game. . . . [¶] . . . [¶] And you say that I have done some evil shit. Girl you ain't seen nothing yet. . . . [¶] . . . [¶] I'll make your life miserable . . . for disrespecting me." On June 26, 2000, Ms. Blizzard received a call from defendant on her cell phone. She believed the number defendant called from was near her office. Ms. Blizzard telephoned the police. Defendant was arrested at a nearby pay telephone. Ms. Blizzard was frightened by defendant's telephone calls. She believed defendant would carry out his threats.

Defendant continued to call Ms. Blizzard from jail following his arrest. Most of the calls were collect calls, which she did not accept. However, once the operator indicated it was a collect call, there was a brief period for defendant to say who was calling. During those brief messages, defendant often made threats. Ms. Blizzard testified defendant left messages like: " 'Yeah, you [*sic*] going to die,' " or " 'You put it on your mama. You [*sic*] going to die. I'm going to make sure your life, you going to wish you never met me . . . . [¶] . . . [¶] Face it, you gone [*sic*] die you taking that risk.' " Ms. Blizzard called the jail in an attempt to get defendant's phone privileges terminated. Ms. Blizzard felt she could not take it any longer: she could not sleep or eat; her work was affected; and she felt as though she would have a nervous breakdown. She was very frightened by defendant's threats. She felt he would kill her. Ms. Blizzard also feared defendant would arrange for someone else to harm or kill her.

Ms. Blizzard attended defendant's parole hearing on August 2, 2000. Ms. Blizzard feared defendant would: be released; come after her; or have someone else come after her. Ms. Blizzard spoke to the police on August 2, 2000. Inglewood Police Officer Ray Wunno interviewed her. Ms. Blizzard gave him a cassette tape of the recorded threats. Officer Wunno believed Ms. Blizzard was frightened because her life had been threatened. Defendant continued to make threatening telephone calls from the jail to Ms. Blizzard. On August 4, 2001, Ms. Blizzard spoke with Inglewood Police Officer Sherry Rumsey. Ms. Blizzard brought additional cassette tapes, to which Officer Rumsey listened. Ms. Blizzard appeared to be frightened. Ms. Blizzard feared defendant would have a friend come to her home and harm her.

■ Defendant argues there was insufficient evidence to support his convictions for making terrorist threats. ■ In reviewing a challenge of the sufficiency of the evidence, we apply the following standard of review: "[We] consider the evidence in a light most favorable to the judgment and presume the existence of every fact the trier could reasonably deduce from the evidence in support of the judgment. The test is whether substantial evidence supports the decision, not whether the evidence proves guilt beyond a reasonable doubt." (*People v. Mincey* (1992) 2 Cal.4th 408, 432 [6 Cal.Rptr.2d 822, 827 P.2d 388]; *People v. Hayes* (1990) 52 Cal.3d 577, 630-631 [276 Cal.Rptr. 874, 802 P.2d 376]; *People v. Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) The United States Supreme Court has held: "[T]his inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' [Citation.] Instead, the relevant question is whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia, supra,* 443 U.S. at pp. 318-319 [99 S.Ct. at p. 2789], original italics; *People v. Hatch* (2000) 22 Cal.4th 260, 272 [92 Cal.Rptr.2d 80, 991 P.2d 165]; *People v. Bolin* (1998) 18 Cal.4th 297, 331 [75 Cal.Rptr.2d 412, 956 P.2d 374]; *People v. Marshall* (1997) 15 Cal.4th 1, 33-34 [61 Cal.Rptr.2d 84, 931 P.2d 262]; *People v. Alvarez* (1996) 14 Cal.4th 155, 224-225 [58 Cal.Rptr.2d 385, 926 P.2d 365]; *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103]; *People v. Barnes* (1986) 42 Cal.3d 284, 303 [228 Cal.Rptr. 228, 721 P.2d 110]; *Taylor v. Stainer, supra,* 31 F.3d at pp. 908-909.) The standard of review is the same in cases where the prosecution relies primarily on circumstantial evidence. (*People v. Bradford* (1997) 15 Cal.4th 1229, 1329 [65 Cal.Rptr.2d 145, 939 P.2d 259]; *People v. Bloom* (1989) 48 Cal.3d 1194, 1208 [259 Cal.Rptr. 669, 774 P.2d 698]; *People v. Bean* (1988) 46 Cal.3d 919, 932 [251 Cal.Rptr. 467, 760 P.2d 996].) The California Supreme Court has held, "Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin, supra,* 18 Cal.4th at p. 331, quoting *People v. Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].)

Section 422 provides in relevant part: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a

gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison." (See also *People v. Toledo* (2000) 26 Cal.4th 221, 227-228 [109 Cal.Rptr.2d 315, 26 P.3d 1051].)

 Defendant argues the prosecution failed to prove the threats he made were so unequivocal and immediate as to convey an immediate prospect of execution. Defendant explains that because he was incarcerated and unable to carry out the threats there was no immediate prospect of execution. We disagree. In *People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1340-1341 [69 Cal.Rptr.2d 728], our colleagues in Division Seven of this appellate district held: "[T]he determination whether a defendant intended his words to be taken as a threat, and whether the words were sufficiently unequivocal, unconditional, immediate and specific they conveyed to the victim an immediacy of purpose and immediate prospect of execution of the threat can be based on all the surrounding circumstances and not just on the words alone. The parties' history can also be considered as one of the relevant circumstances. (See, e.g., *People v. Martinez* (1997) 53 Cal.App.4th 1212, 1218 [62 Cal.Rptr.2d 303] [the meaning of the defendant's threat must be gleaned from the words and all of the surrounding circumstances]; *People v. Gudger* (1994) 29 Cal.App.4th 310, 321 [34 Cal.Rptr.2d 510] [it is necessary to review the language and context of the threat to determine if the speaker had the specific intent the statement was to be taken as a threat]; *People v. Stanfield* [(1995)] 32 Cal.App.4th 1152, 1159 [38 Cal.Rptr.2d 328] [the statute does not concentrate on the precise words of the threat but whether the threat communicated a gravity of purpose and immediate prospect of execution of the threat].)" (See also *People v. Solis* (2001) 90 Cal.App.4th 1002, 1011-1017 [109 Cal.Rptr.2d 464].)

 In this case, defendant had a lengthy history of not only threatening but also physically assaulting Ms. Blizzard. Between November 1999 and June 2000, defendant: pushed Ms. Blizzard against the wall on several occasions; pulled her clothing and hair; broke into her apartment; tore up her belongings; disabled her car; smashed his fist through her car window; and verbally abused her. In addition, defendant said he had pistol-whipped his former girlfriend and intended to shoot her. It was reasonable for Ms. Blizzard to fear that defendant would also follow through on the threats he made from jail based on the totality of the circumstances. (*People v. Franz* (2001) 88 Cal.App.4th 1426, 1448-1449 [106 Cal.Rptr.2d 773] [although the defendant's threat was made as he was being arrested, the victims' fear of immediate harm was reasonable because of his prior assault]; *People v.*

*Mendoza, supra,* 59 Cal.App.4th at pp. 1340-1341; *People v. Martinez, supra,* 53 Cal.App.4th at p. 1218.) In addition, the first series of threats preceded defendant's parole violation hearing. Not only did Ms. Blizzard fear defendant would be released following the hearing, but also his threats made reference to the fact that she had only a few days until he would be released: "Just three more days"; "You got [*sic*] three more days to apologize for your disrespect"; and "Hey tramp. I'm gone [*sic*] spare you one more day." Moreover, both before and after his parole hearing, defendant made reference to the fact that he would send someone to get her: "Somebody gone [*sic*] come see you . . . ." There was evidence of defendant's past domestic abuse of both Ms. Blizzard and his former girlfriend. This further supported Ms. Blizzard's fears his threats were specific, unequivocal, and immediate. (See *People v. Franz, supra,* 88 Cal.App.4th at pp. 1448-1449; *People v. McCray* (1997) 58 Cal.App.4th 159, 172 [67 Cal.Rptr.2d 872]; *People v. Allen* (1995) 33 Cal.App.4th 1149, 1156 [40 Cal.Rptr.2d 7]; [history of stormy relationship between the defendant and victim relevant in establishing victim's fear].) As our colleagues in the Fifth District Court of Appeals have held: "A threat is sufficiently specific where it threatens death or great bodily injury. A threat is not insufficient simply because it does 'not communicate a time or precise manner of execution, section 422 does not require those details to be expressed.'" (*People v. Butler* (2000) 85 Cal.App.4th 745, 752 [102 Cal.Rptr.2d 269], quoting *In re David L.* (1991) 234 Cal.App.3d 1655, 1660 [286 Cal.Rptr. 398]; see also *People v. Lopez* (1999) 74 Cal.App.4th 675, 679-680 [88 Cal.Rptr.2d 252] [§ 422 does not require an immediate ability to carry out the threat]; *People v. Melhado* (1998) 60 Cal.App.4th 1529, 1538 [70 Cal.Rptr.2d 878] ["[W]e understand the word 'immediate' to mean that degree of seriousness and imminence which is understood by the victim to be attached to the *future prospect* of the threat being carried out, should the conditions not be met."].) Substantial evidence supports the judgment.

The judgment is affirmed.

Armstrong, J., and Mosk, J., concurred.