Filed 5/27/14  P. v. Burnett CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BRIAN DASHA BURNETT,<br><br>    Defendant and Appellant. | 2d Crim. No. B247331<br>(Super. Ct. No. TA124723)<br>(Los Angeles County) |

Brian Dasha Burnett appeals from the judgment entered after a jury convicted him of threatening to commit a crime that would result in death or great bodily injury.  (Pen. Code, § 422, subd. (a).)[1]  The jury found not true an allegation that appellant had personally used a deadly weapon (a crossbow) in the commission of the crime.  (§ 12022, subd. (b)(1).)  The trial court found true allegations of one prior serious or violent felony conviction within the meaning of California's "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), one prior serious felony conviction (§ 667, subd. (a)(1)), and two prior separate prison terms.  (§ 667.5, subd. (b).)  Appellant was sentenced to prison for 12 years.

Appellant contends that the evidence is insufficient to support his conviction and that the trial court erroneously admitted evidence of consciousness of guilt.  We conclude

---

[1] Unless otherwise stated, all statutory references are to the Penal Code.

that the latter contention has merit, but we affirm because the error was harmless beyond a reasonable doubt.

*Facts*

Appellant lived with his mother, Lucinda Warren, at her home. Warren was hospitalized for about one month. When she returned home, she noticed that a gun and two ammunition clips were missing from her bedroom. There was no sign of a forced entry into the residence. Warren believed that appellant had taken the gun and clips.

That evening, Warren heard appellant outside "hollering to open up" the door. Warren opened the door and saw that appellant "could barely stand up, and his eyes was [*sic*] rolling in his head." Warren asked appellant if he was "high." Appellant replied, " 'You fucking right.' " Appellant walked inside with a crossbow and arrows in his hands. He ascended the stairway to the second floor. At the top of the stairway, appellant "hollered": " 'You better not fuck with me. . . . I'll be down there to get your ass.' "

Warren believed that appellant "was high out of his mind." She "got very scared" because he was carrying a crossbow and arrows and she was convinced that he had taken her gun. Warren "was scared he was going to come down[stairs] and get me." She did not go upstairs and try to talk with appellant because "he probably would have killed me." Appellant had been threatening Warren's family and had previously told her "that [she] better get three caskets ready." Warren got into her car, telephoned 911, and drove away.

At about 8:00 p.m., Deputy Phillip Muse responded to the 911 call and contacted Warren. Muse testified: "[S]he was visibly shaken, scared. Her voice was trembling." At about 8:30 p.m., Muse and his partner went to Warren's residence and repeatedly ordered appellant to come outside. After appellant refused to exit the residence, Muse called for reinforcements. Muse explained that "reinforcements . . . have special training and special gear and armor they wear to make" forced entries. Reinforcements arrived at about 1:00 or 2:00 a.m. and remained at the scene for about five hours. "[T]eargas [sic] was used inside the house." Muse took appellant into custody at about 6:00 a.m.

2

*Sufficiency of the Evidence*

The trial court instructed the jury that the People must prove (1) that appellant "intended that his statement be understood as a threat," and (2) that "[t]he threat was so clear, immediate, unconditional, and specific that it communicated to Lucinda Warren a serious intention and the immediate prospect that the threat would be carried out." Appellant argues that the evidence is insufficient to establish these two elements.

We "review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence - that is, evidence that is reasonable, credible, and of solid value - such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.]" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

As to the first element - he intended that his statement be understood as a threat - appellant argues that "[t]he totality of circumstances support a reasonable conclusion that [his] words ["You better not fuck with me. . . . I'll be down there to get your ass"] were simply an emotional outburst, not an attempt to instill fear." The question, however, is not whether the evidence reasonably supports his characterization. " ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment." ' [Citations.]" (*People v. Bean* (1988) 46 Cal.3d 919, 933.)

The circumstances reasonably justify the jury's finding that appellant intended that his statement be understood as a threat. Appellant did not just say that he would "be down there to get [Warren's] ass." He made the statement while holding a deadly weapon - a crossbow and arrows. The jury impliedly found that appellant had not intentionally displayed the crossbow and arrows in a menacing manner.[2] But his possession of this

---

[2] As we previously noted, the jury found not true an allegation that appellant had personally used a deadly weapon within the meaning of section 12022, subdivision (b)(1). The jury was instructed that a person uses a deadly weapon if he intentionally "[d]isplays the weapon in a menacing manner" or "[h]its someone with the weapon."

3

deadly weapon meant that he had equipped himself with the means to inflict death or great bodily injury upon Warren. Furthermore, appellant had been threatening Warren's family and had previously told her "that [she] better get three caskets ready." The reference to the "three caskets" could reasonably be construed as a death theat. "Viewing appellant's [statement] in [its] entire context," a reasonable trier of fact could find beyond a reasonable doubt that he had intended that the statement be understood as a threat. (*People v. Gudger* (1994) 29 Cal.App.4th 310, 322; see also *In re George T.* (2004) 33 Cal.4th 620, 635 ["A communication that is ambiguous on its face may nonetheless be found to be a criminal threat if the surrounding circumstances clarify the communication's meaning"].)

As to the second element, " '[u]nequivocality, unconditionality, immediacy and specificity are not absolutely mandated, but must be sufficiently present in the threat and surrounding circumstances to convey gravity of purpose and immediate prospect of execution to the victim.' [Citation.]" (*People v. Bolin* (1998) 18 Cal.4th 297, 340.) "Viewing appellant's threat[] in [its] entire context," a reasonable trier of fact could find beyond a reasonable doubt that the threat satisfied the requirements of the second element. (*People v. Gudger*, *supra*, 29 Cal.App.4th at p. 322.)

Appellant argues: "The situation in this case is similar to that in In re Ricky T. (2001) 87 Cal.App.4th 1132, where the appellate court concluded that there was insufficient evidence that the minor committed a misdemeanor criminal threat in violation of section 422." We disagree. *Ricky T.* is distinguishable. There, the minor was a high school student. He went to a classroom and pounded on the locked door. When the teacher opened it, he accidentally struck minor with the door (the door opened outwardly). Minor "became angry, cursed [the teacher] and threatened him, saying, 'I'm going to get you.' " (*Id*., at p. 1135.) Minor told the police that he had said "he would 'kick [teacher's] ass.' " (*Id*., at p. 1137.)

In determining that the evidence was insufficient, the *Ricky T.* court noted: "[T]he remark 'I'm going to get you' is ambiguous on its face and no more than a vague threat of retaliation without prospect of execution. [Citation.] [Minor's] 'kick your ass' and

4

cursing statements were made in response to his accident with the door." (*In re Ricky T.*, *supra*, 87 Cal.App.4th at p. 1138.) Furthermore, "there was no evidence in this case to suggest that [minor] and [teacher] had any prior history of disagreements, or that either had previously quarreled, or addressed contentious, hostile, or offensive remarks to the other. [Citations.] Nor was there evidence that a physical confrontation was actually imminent. [Citation.] (***Ibid***.)

Here, in contrast, appellant did not make "no more than a vague threat of retaliation without prospect of execution." (*In re Ricky T.*, *supra*, 87 Cal.App.4th at p. 1138.) Appellant said, " 'I'll be down there to get your ass.' " This statement communicated to Warren an "immediate prospect that the threat would be carried out." Appellant in effect was saying that he was about to go downstairs and inflict physical harm upon Warren. Unlike the minor in *Ricky T.*, appellant was armed with a deadly weapon. In addition, appellant had previously made what could reasonably be construed as a death threat against Warren's family. Thus, the instant case is a far cry from what the *Ricky T.* court characterized as "an angry adolescent's utterances" made in "emotional response to an accident" in a "school confrontation between a student and a teacher." (***Id***., at p. 1141.)

*Admission of Evidence of Consciousness of Guilt*

Appellant contends that the trial court erred in admitting, as evidence of consciousness of guilt, "that [he] did not exit his house on police command." (Capitalization omitted.) Appellant argues: "[He] did not engage in any criminal conduct by refusing to exit his home. He merely refused to exit. By his refusal he was exercising his 4th Amendment right to require the police to obtain a warrant or show exigency to justify their entry into his home to seize him. His refusal to consent to seizure was used as substantive evidence of guilt contrary to [constitutional] protections . . . ."

Appellant relies in part on *People v. Keener* (1983) 148 Cal.App.3d 73. There, the trial court admitted, as evidence of consciousness of guilt, the defendant's refusal to comply with police orders to leave his apartment. The trial court reasoned that "if defendant was not guilty he would have immediately surrendered." (***Id***., at p. 78.) The

5

appellate court concluded that "[a]dmission of this questionably relevant evidence violated the privilege to be free from comment upon the assertion of a constitutional right. [Citations.]" (*Id*., at p. 78.) The court explained: "Presenting evidence of an individual's exercise of a right to refuse to consent to entry in order to demonstrate a consciousness of guilt merely serves to punish the exercise of the right to insist upon a warrant. It is of no consequence that police had a right to enter without a warrant here, nor does it matter that defendant spoke to the police during the siege. 'The right to refuse [entry] protects both the innocent and the guilty, and to use its exercise against the defendant would be . . . a penalty imposed by courts for exercising a constitutional right.' [Citation.]" (*Id*., at p. 79, brackets in original.)

The People argue that appellant forfeited this constitutional issue because he "failed to fairly articulate his current claim for the trial court in advance of its ruling admitting [the consciousness of guilt] evidence." The People continue: "Appellant did not articulate that the 'constitutional right' he vaguely invoked was premised upon the Fourth Amendment or provide case authority relevant to his appellate contention until he filed his Motion for New Trial . . . ."

In a pretrial written motion in limine, appellant requested that the court exclude reference to (1) "a SWAT team or the number of officers that responded to the location in question," and (2) "a stand-off, barricade, or long delay before [appellant] exited his home." In support of his request, appellant cited only Evidence Code section 352 (section 352), which provides: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

But during a court hearing on the motion in limine, appellant raised the constitutional issue. Defense counsel stated that the admission of evidence of appellant's refusal to exit his residence "really adds up to the criminalizing of [his] assertion of his constitutional rights." Counsel noted that a misdemeanor charge of resisting a peace officer in violation of section 148 had previously been dismissed pursuant to section 995

6

"because the defendant's passive assertion of his constitutional right cannot be turned into a 148 charge." Counsel continued: "It's just highly prejudicial to say that, because he was just exercising his right by remaining in his home, that that's somehow an indication that he was guilty. I mean, he has a right to remain in his home." The court responded: "I think his conduct . . . is not unduly prejudicial . . . . I think it is relevant with regard to his consciousness of guilt. So I'm going to allow counsel to bring in the conduct of the defendant shortly after the reporting to the police." The court excluded mention of the terms "barricade" and "SWAT team."

Appellant adequately raised the constitutional issue during the hearing in the trial court. Appellant made clear that his refusal to exit his residence was inadmissible as evidence of consciousness of guilt because he had a constitutional right to remain in his home. Appellant did not cite the Fourth Amendment, but it was obviously implicated: " ' "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." ' [Citation.] 'At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' [Citation.]" (*People v. Sanders* (2003) 31 Cal.4th 318, 324, brackets in original except for citations.) It would have been helpful if in the trial court appellant had cited *People v. Keener*, *supra*, 148 Cal.App.3d 73, but we are not aware of any requirement that a defendant cite relevant case law to preserve an issue for appellate review.

The People argue that appellant's constitutional rights were not violated because the deputies obtained a search warrant for the residence. But no evidence was presented as to when the search warrant was issued. When defense counsel tried to elicit this information, the prosecutor objected. During cross-examination of Deputy Muse, defense counsel asked, "[P]rior to [appellant] coming out of his home, there was no search warrant obtained; correct?" Muse responded, "I know there was a search warrant." Counsel countered, "Not obtained prior to him coming out of the house, though; isn't that correct?" The prosecutor made a relevance objection, which the trial court sustained. At a sidebar conference, counsel stated: "[Appellant] had a

7

constitutional right to remain i[n] his house. . . . [¶] . . . I need to go into the fact that they didn't have a legal basis to get into that house." The court replied: "You aren't going to get into that. . . . If he [appellant] wants to get up there and say, 'I didn't come out because it's my constitutional right not to come out,' then you can do that . . . ." Appellant did not testify.

Here, until a warrant was issued and appellant was informed of its issuance, he had a right to remain in the residence and refuse to consent to entry by the deputies. (*People v. Keener*, *supra*, 148 Cal.App.3d at p. 79.) Accordingly, the trial court erroneously admitted, as evidence of consciousness of guilt, appellant's refusal to comply with the deputies' demands to exit his residence.

*Prejudice*

Assuming, without deciding, that the erroneous admission of the evidence of consciousness of guilt impinged upon appellant's Fourth Amendment rights, we review the record and determine whether the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 17 L.Ed.2d 705].) A reversal is not required because, beyond a reasonable doubt, the jury would have found appellant guilty if the evidence of consciousness of guilt had been excluded. Without this inadmissible evidence, the evidence of his guilt was still overwhelming. We also consider that the evidence of appellant's refusal to exit his residence was not inflammatory. The incident ended peacefully. Deputy Muse testified that, so far as he knew, the deputies had not forced entry into the residence. A forced entry was unnecessary because appellant "ended up giving up."

We also observe that, in his rebuttal closing argument, the prosecutor advocated the misuse of the evidence of appellant's refusal to exit his residence. The prosecutor stated: "[T]here was a stand-off from 8:30 at night to 6:00 o'clock. The tear gas had to be used. This shows you the mentality of this man. It shows you what he is capable of, of what he was communicating, and it shows that her [Warren's] fear was justified. And thank God she left at that moment." This argument was misconduct. The trial court admitted evidence of appellant's refusal to exit his residence for a limited purpose: to

show consciousness of guilt. In this argument the prosecutor used the evidence to show appellant's bad character and that Warren justifiably feared him. Appellant, however, did not object. By not objecting, he forfeited the issue. (*People v. Edwards* (2013) 57 Cal.4th 658, 736.) In any event, the prosecutor's misconduct does not affect our determination that the erroneous admission of appellant's refusal to exit his residence was harmless beyond a reasonable doubt.

*Disposition*

The judgment is affirmed.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, J.

PERREN, P.J.

9

Eleanor J. Hunter, Judge

Superior Court County of Los Angeles

_____

Jolin Larimore, under appointment by the Court of Appeal, for Appellant

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell, Supervising Deputy Attorney General, Tasha G. Timbadia, Deputy Attorney General, for Plaintiff and Respondent.